1  PAUL J. ANDRE (State Bar No. 196585)
   pandre@kramerlevin.com
2  LISA KOBIALKA (State Bar No. 191404)
   lkobialka@kramerlevin.com
3  JAMES HANNAH (State Bar No. 237978)
   jhannah@kramerlevin.com
4  KRAMER LEVIN NAFTALIS & FRANKEL LLP
   990 Marsh Road
5  Menlo Park, CA 94025
   Telephone: (650) 752-1700
6  Facsimile: (650) 752-1800

7  *Attorneys for Plaintiff*
8  FINJAN, INC.

9              **IN THE UNITED STATES DISTRICT COURT**

10           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

11

12

13 FINJAN, INC., a Delaware Corporation,        Case No.:

14              Plaintiff,                       **COMPLAINT FOR PATENT
                                                  INFRINGEMENT**
15        v.

16 WEBSENSE, INC., a Delaware Corporation,      **DEMAND FOR JURY TRIAL**

17              Defendant.

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT                                CASE NO.

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Finjan, Inc. ("Finjan") files this Complaint for Patent Infringement and Jury Demand against Defendant Websense, Inc. ("Defendant" or "Websense") and alleges as follows:

## THE PARTIES

1.      Finjan is a Delaware corporation, with its corporate headquarters at 1313 N. Market Street, Suite 5100, Wilmington, Delaware 19801.  Finjan's U.S. operating business was previously headquartered at 2025 Gateway Place, San Jose, California 95110.

2.      Websense is a Delaware corporation, with its principal place of business at 10240 Sorrento Valley Road, San Diego, California 92121.

## JURISDICTION AND VENUE

3.      This action arises under the Patent Act, 35 U.S.C. §§ 101 *et seq*.  This Court has original jurisdiction over this controversy pursuant to 28 U.S.C. §§ 1331 and 1338.

4.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and (c) and/or 1400(b).

5.      This Court has personal jurisdiction over Defendant.  Upon information and belief, Defendant does business in this District and has, and continues to, infringe and/or induce the infringement in this District.  Defendant also markets its products primarily in and from this District. In addition, the Court has personal jurisdiction over Defendant because it has established minimum contacts with the forum and the exercise of jurisdiction would not offend traditional notions of fair play and substantial justice.

## INTRADISTRICT ASSIGNMENT

6.      Pursuant to Local Rule 3-2(c), Intellectual Property Actions are assigned on a district-wide basis.

## **FINJAN'S INNOVATIONS**

7.      Finjan was founded in 1997 as a wholly-owned subsidiary of Finjan Software Ltd., an Israeli corporation.  Finjan was a pioneer in the developing proactive security technologies capable of detecting previously unknown and emerging online security threats recognized today under the umbrella of "malware."  These technologies protect networks and endpoints by identifying suspicious patterns and behaviors of content delivered over the Internet.  Finjan has been awarded, and continues to prosecute, numerous patents in the United States and around the world resulting directly from Finjan's more than decade-long research and development efforts, supported by a dozen inventors.

8.      Finjan built and sold software, including APIs, and appliances for network security using these patented technologies.  These products and customers continue to be supported by Finjan's licensing partners.  At its height, Finjan employed nearly 150 employees around the world building and selling security products and operating the Malicious Code Research Center through which it frequently published research regarding network security and current threats on the Internet. Finjan's pioneering approach to online security drew equity investments from two major software and technology companies, the first in 2005, followed by the second in 2006.  Through 2009, Finjan has generated millions of dollars in product sales and related services and support revenues.

9.      Finjan's founder and original investors are still involved with and invested in the company today, as are a number of other key executives and advisors.  Currently, Finjan is a technology company applying its research, development, knowledge and experience with security technologies to working with inventors, investing in and/or acquiring other technology companies, investing in a variety of research organizations, and evaluating strategic partnerships with large companies.

COMPLAINT FOR PATENT INFRINGEMENT                                    CASE NO.

10.     On March 18, 2014, U.S. Patent No. 8,677,494 ("the '494 Patent"), entitled MALICIOUS MOBILE CODE RUNTIME MONITORING SYSTEM AND METHODS, was issued to Yigal Mordechai Edery, Nimrod Itzhak Vered, David R. Kroll and Shlomo Touboul.  A true and correct copy of the '494 Patent is attached to this Complaint as Exhibit A and is incorporated by reference herein.

11.     All rights, title, and interest in the '494 Patent have been assigned to Finjan, who is the sole owner of the '494 Patent.  Finjan has been the sole owner of the '494 Patent since its issuance.

12.     The '494 Patent is generally directed towards computers and computer networks, and more particularly, provides a method and system that derives a security profile for a downloadable, which includes a list of suspicious computer operations, and stores the security profile in a database.

## **WEBSENSE**

13.     Websense makes, uses, sells, offers for sale, and/or imports into the United States and this District its TRITON Products, Web Security Gateway Products, Data Security Products, the CyberSecurity Intelligence ("CSI") Service and the ThreatSeeker Network Service.

14.     Websense's TRITON Products include the software and appliances running TRITON Enterprise, TRITON Security Gateway Anywhere and TRITON Security Gateway.  *See* http://www.websense.com/content/websense-triton-security-products.aspx (attached as Exhibit B).

15.     Websense's Web Security Gateway Products include the software and appliances running Web Security Gateway, Web Security Gateway Anywhere, Cloud Web Security Gateway and ACE in the Cloud.  *See* http://www.websense.com/content/websense-web-security-products.aspx (attached as Exhibit C).

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

16.    Websense's Data Security Products include the software and appliances running Data Security Suite and Data Security Gateway.  *See* http://www.websense.com/content/websense-data-security-products.aspx (attached as Exhibit D).

17.    Shown below is a diagram of Websense's products and services.  *See* WP_HoneyGrid_Computing.pdf at 5 (attached as Exhibit E):



18.    The TRITON Products, Web Security Gateway Products and CSI Service rely on the Websense ThreatSeeker Network.  The ThreatSeeker Network seeks out threats contained within web, social media and email content and analyzes three to five billion requests per day.  The TRITON Products, Web Security Gateway Products, Data Security Products, CSI Service and Websense ThreatSeeker Network utilize Websense's Advanced Classification Engine ("ACE") to detect

4

malicious content.  ACE and the ThreatSeeker Network are maintained by Websense and the Websense Security Labs.  *See* http://www.websense.com/content/websense-triton-security-products.aspx (attached as Exhibit B); http://www.websense.com/content/web-security-gateway-features.aspx (attached as Exhibit F); datasheet-ace-in-the-cloud-en.pdf (attached as Exhibit G); datasheet-csi-en.pdf (attached as Exhibit H); and http://www.websense.com/content/websense-threatseeker-network.aspx (attached as Exhibit I).  Shown below is a diagram depicting technologies in Websense's ACE.  *See* datasheet-ace-in-the-cloud-en.pdf at 2 (attached as Exhibit G):



19.    ACE provides inline contextual defenses for web, email, data and mobile security using analytics to create a composite risk score for downloaded content and is the primary engine for all of Websense's TRITON Products.  ACE includes Real-Time Security Classification ("RTSC") for detection of exploit code and malicious browser plugins, JavaScript, ActiveX, shell code, exploit kits, cross-site scripts and incorporated built-in parsing, obfuscation detection and de-obfuscation.  *See* Websense_ACE_77_WhitePaper.pdf at 3-4 (attached as Exhibit J); *see also* ACE_Insight_Sample.pdf (attached as Exhibit K), http://www.websense.com/content/websense-advanced-classification-engine.aspx (attached as Exhibit L).

COMPLAINT FOR PATENT INFRINGEMENT                              CASE NO.

20. CSI Service includes the ThreatScope online sandbox for detecting potential malware. The ThreatScope monitors all activity of potential malware and documents all activity in a detailed report including the infection process, post-infection activities including network communications, system-level events and processes and registry changes and file modifications. ThreatScope takes the observed behavior and correlates it with known threats to provide information on zero-day threats in real-time. *See* datasheet-csi-en.pdf (attached as Exhibit H); *see also* ThreatReport-Complete.pdf (attached as Exhibit M).

21. Websense Data Security Products and TRITON Products detect unusual behavior in a network such as small amounts of confidential data being sent over multiple communications channels, or over an extended period of time. *See* www.websense.com/content/data-security-suite-features.aspx (attached as Exhibit N). Websense Data Security Products and TRITON Products include cumulative incident memory that remembers a user's breaches over time and creates incidents when a threshold is met, as well as machine learning for establishing examples of content that a user wants to protect. *See* v7.7 Release Notes for Websense® Data Security at 2-3 (attached as Exhibit O).

22. Websense TRITON Products and Web Security Gateway Products can filter files based on their true file type. The TRITON Products and Web Security Gateway Products utilize content stripping to remove unwanted or potentially malicious content. *See* Triton_web_help.pdf at pages 198-99, 282-83 and 286-87 (attached as Exhibit P).

## WEBSENSE'S INFRINGEMENT OF FINJAN'S PATENT

23. Defendant has been and is now infringing the '494 Patent in this judicial District, and elsewhere in the United States by, among other things, making, using, importing, selling, and/or offering for sale the claimed systems and methods on the Websense TRITON Products, Web Security

COMPLAINT FOR PATENT INFRINGEMENT                CASE NO.

Gateway Products, Data Security Products, CSI Service, ThreatSeeker Network and products or services using ACE.

24.     In addition to directly infringing the '494 Patent pursuant to 35 U.S.C. § 271(a) either literally or under the doctrine of equivalents, Defendant indirectly infringes the '494 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including its users and developers, to perform all or some of the steps of method claims of the '494 Patent, either literally or under the doctrine of equivalents.

## COUNT I
### (Direct Infringement of the '494 Patent pursuant to 35 U.S.C. § 271(a))

25.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

26.     Defendant has infringed and continues to infringe one or more claims of the '494 Patent in violation of 35 U.S.C. § 271(a).

27.     Defendant's infringement is based upon literal infringement or, in the alternative, infringement under the doctrine of equivalents.

28.     Defendant's acts of making, using, importing, selling, and/or offering for sale infringing products and services have been without the permission, consent, authorization or license of Finjan.

29.     Defendant's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of Defendant's products and services, including but not limited to Websense TRITON Products, Web Security Gateway Products, Data Security Products, CSI Service and Websense products and services using ACE or ThreatSeeker, which embody the patented invention of the '494 Patent.

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

30.     As a result of Defendant's unlawful activities, Finjan has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law.  Accordingly, Finjan is entitled to preliminary and/or permanent injunctive relief.

31.     Defendant's infringement of the '494 Patent has injured and continues to injure Finjan in an amount to be proven at trial.

## COUNT II
### (Indirect Infringement of the '494 Patent pursuant to 35 U.S.C. § 271(b))

32.     Finjan repeats, realleges, and incorporates by reference, as if fully set forth herein, the allegations of the preceding paragraphs, as set forth above.

33.     Defendant has induced and continues to induce infringement of at least claims 1-9 of the '494 Patent under 35 U.S.C. § 271(b).

34.     In addition to directly infringing the '494 Patent, Defendant indirectly infringes the '494 Patent pursuant to 35 U.S.C. § 271(b) by instructing, directing and/or requiring others, including but not limited to its customers, users and developers, to perform all or some of the steps of the method claims, either literally or under the doctrine of equivalents, of the '494 Patent, where all the steps of the method claims are performed by either Websense or its customers, users or developers, or some combination thereof.  Defendant knew or was willfully blind to the fact that it was inducing others, including customers, users and developers, to infringe by practicing, either themselves or in conjunction with Defendant, one or more method claims of the '494 Patent.

35.     Defendant knowingly and actively aided and abetted the direct infringement of the '494 Patent by instructing and encouraging its customers, users and developers to use the Websense TRITON Products, Web Security Gateway Products, Data Security Products, CSI Service and Websense products and services using ACE or ThreatSeeker.  Such instructions and encouragement include, but are not limited to, advising third parties to use the Websense TRITON Products, Web

8

Security Gateway Products, Data Security Products, CSI Service and Websense products and services using ACE or ThreatSeeker in an infringing manner; providing a mechanism through which third parties may infringe the '494 Patent, specifically through the use of the Websense TRITON Products, Web Security Gateway Products, Data Security Products, CSI Service and Websense products and services using ACE or ThreatSeeker, advertising and promoting the use of the Websense TRITON Products, Web Security Gateway Products, Data Security Products, CSI Service and Websense products and services using ACE or ThreatSeeker in an infringing manner, and distributing guidelines and instructions to third parties on how to use the Websense TRITON Products, Web Security Gateway Products, Data Security Products, CSI Service and Websense products and services using ACE or ThreatSeeker in an infringing manner.

36.     Websense regularly updates and maintains the Websense website (http://www.websense.com), the Websense Support Center (http://www.websense.com/content/support.aspx) and the Websense ACE Insight$^{TM}$ and ThreatScope$^{TM}$ Portals (*see* http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index) to provide demonstration, instruction, and technical assistance to users to help them use the Websense TRITON Products, Web Security Gateway Products, Data Security Products, CSI Service and Websense products and services using ACE or ThreatSeeker, including:

- Industry firsts make Websense® TRITON$^{TM}$ second to none (*see e.g.*, www.websense.com/content/TRITONseven7.aspx, attached as Exhibit Q, states that "Websense TRITON solutions give you the best defense against advanced threats.");

- TRITON – Web Security Help: Websense® Web Security Solutions (see e.g., triton_web_help.pdf at 17, attached as Exhibit P, describes how to use the TRITON product and that "[t]o learn to use Websense Web Security solutions and find answers to your questions, browse this guide …");

- Sample ACE Insight$^{TM}$ and ThreatScope$^{TM}$ Reports (*see e.g.*, ACE_Insight_Sample.pdf, attached as Exhibit K, and ThreatReport-Complete.pdf, attached as Exhibit M);

9

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

- Websense® CyberSecurity Intelligence[TM] Services Datasheet (*see e.g.*, datasheet-csi-en.pdf, attached as Exhibit H, states that "[s]ecurity analysts say that in-house resources alone are not enough.   Websense CyberSecurity Intelligence (CSI) services let your IT staff join forces with Websense Security Labs[TM]…");

- About Websense® Security Labs (*see e.g.*, http://securitylabs.websense.com/content/about.aspx, attached as Exhibit R, states that "[w]ith emerging threats changing their attack profiles at unprecedented rates, security professionals must wisely predict the future to provide today's proactive solutions.");

- Security Overview: Websense® ACE (Advanced Classification Engine) (*see e.g.*, Websense_ACE_77_WhitePaper.pdf, attached as Exhibit J, states that "[w]ith the declining effectiveness of security solutions previously considered 'core', it is vital to consider what ACE can offer through Websense web, email, data, and mobile security solutions, whether through appliance gateways or cloud security services or a hybrid deployment."); and

- The Websense® ThreatSeeker® Network: Leveraging Websense HoneyGrid Computing (*see e.g.*, WP_HoneyGrid_Computing.pdf at 3, attached as Exhibit E, states when describing ThreatSeeker that "[s]ecurity teams have no choice but to find a reliable way to allow productive use of the Internet, while safeguarding essential enterprise information from loss or theft.").

37.     Websense instructs users, including employees, to use and test the Websense TRITON Products, Web Security Gateway Products, Data Security Products, CSI Service and Websense products and services using ACE or ThreatSeeker.  For example, Websense provides a technical expert to assist users in installing, configuring, and troubleshooting Websense products.  *See* http://www.websense.com/content/training-and-technical-certification.aspx (attached as Exhibit S). Websense maintains portals at www.MyWebsense.com, http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index that customers use to access updated patches and hotfixes, product news, evaluations and technical support resources.  *See* http://www.websense.com/content/TechnicalSupportPrograms.aspx (attached as Exhibit T).

38.     Websense provides security solution providers, managed service providers and system integrators with the Websense Global Partner Program to encourage and expand use of the Websense TRITON Products, Web Security Gateway Products, Data Security Products, CSI Service and Websense products and services using ACE or ThreatSeeker.  The Websense Global Partner Program

10

"offers a suite of benefits to enable business growth, including security industry expertise, tools and support to help increase sales and customer satisfaction." *See* https://www.websense.com/content/websense-partner-programs.aspx (attached as Exhibit U). The Websense Global Partner Program also offers access to Websense expertise, discounts, sales and technical training and tools. Websense also offers the TRITON Security Alliance Program and the OEM Partner Program. *See* https://www.websense.com/content/websense-triton-security-alliance.aspx (attached as Exhibit V). Websense utilizes indirect distributors and value-added resellers, which in North America includes Ingram Micro, Arrow Enterprise Computing Solutions and ComputerLinks to distribute Websense products and provide credit facilities, marketing support and other services. *See* Websense Form 10-Q of March 31, 2013 at 16 (attached as Exhibit W).

39.     Defendant has had knowledge of the '494 Patent at least as of the filing of Finjan's first amended complaint and, by continuing the actions described above, has had the specific intent to or was willfully blind to the fact that its actions would induce infringement of the '494 Patent. On information and belief, Websense had knowledge of the '494 Patent's application because Defendant is involved in a lawsuit involving the '194 Patent, also owned by Finjan, Inc., and which shares the inventor Shlomo Touboul with the '494 Patent.

40.     Websense actively and intentionally maintains its website to promote the Websense TRITON Products, Web Security Gateway Products, Data Security Products, CSI Service and Websense products and services using ACE or ThreatSeeker and to encourage potential customers, users and developers to use the Websense TRITON Products, Web Security Gateway Products, Data Security Products, CSI Service and Websense products and services using ACE or ThreatSeeker in the manner described by Finjan (http://www.websense.com/content/Home.aspx,

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

http://www.websense.com/content/support.aspx, www.MyWebsense.com, http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index).

41.     Websense actively updates its websites, including Websense's Support Center, to promote the Websense TRITON Products, Web Security Gateway Products, Data Security Products, CSI Service and Websense products and services using ACE or ThreatSeeker to encourage customers, users and developers to practice the methods taught in the '494 Patent (http://www.websense.com/content/Home.aspx, http://www.websense.com/content/support.aspx, www.MyWebsense.com, http://csi.websense.com/ and http://csi.websense.com/ThreatScope/Index).

**PRAYER FOR RELIEF**

WHEREFORE, Finjan prays for judgment and relief as follows:

A.     An entry of judgment holding Defendant has infringed, is infringing, is inducing infringement, and has induced infringement of the '494 Patent;

B.     A preliminary and permanent injunction against Defendant and its officers, employees, agents, servants, attorneys, instrumentalities, and/or those in privity with them, from infringing the '494 Patent, or inducing the infringement of the '494 Patent, and for all further and proper injunctive relief pursuant to 35 U.S.C. § 283;

C.     An award to Finjan of such damages as it shall prove at trial against Defendant that is adequate to fully compensate Finjan for Defendant's infringement of the '494 Patent, said damages to be no less than a reasonable royalty;

D.     A finding that this case is "exceptional" and an award to Finjan of its costs and reasonable attorney's fees, as provided by 35 U.S.C. § 285;

E.     An accounting of all infringing sales and revenues, together with post-judgment interest and prejudgment interest from the first date of infringement of the '494 Patent; and

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.

1        F.       Such further and other relief as the Court may deem proper and just.

2

3                                                      Respectfully submitted,

4

5   Dated:  March 24, 2014               By:   */s/ Paul J. Andre*

6                                            Paul J. Andre
                                             Lisa Kobialka

7                                            James Hannah
                                             KRAMER LEVIN NAFTALIS

8                                            & FRANKEL LLP
                                             990 Marsh Road

9                                            Menlo Park, CA 94025
                                             Telephone: (650) 752-1700

10                                           Facsimile: (650) 752-1800

11                                           pandre@kramerlevin.com
                                             lkobialka@kramerlevin.com

12                                           jhannah@kramerlevin.com

13                                           *Attorneys for Plaintiff*
                                             FINJAN, INC.

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT                CASE NO.

1

## DEMAND FOR JURY TRIAL

2      Finjan demands a jury trial on all issues so triable.

3                                    Respectfully submitted,

4

5      Dated: March 24, 2014              By:   /s/ Paul J. Andre
                                          Paul J. Andre
6                                         Lisa Kobialka
                                          James Hannah
7                                         KRAMER LEVIN NAFTALIS
                                          & FRANKEL LLP
8                                         990 Marsh Road
                                          Menlo Park, CA 94025
9                                         Telephone: (650) 752-1700
                                          Facsimile: (650) 752-1800
10                                        pandre@kramerlevin.com
11                                        lkobialka@kramerlevin.com
                                          jhannah@kramerlevin.com
12
13                                        Attorneys for Plaintiff
                                          FINJAN, INC.
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR PATENT INFRINGEMENT                    CASE NO.